FRANK R. HAYDEN *vs.* MAINE CENTRAL RAILROAD COMPANY.

Androscoggin.    Opinion January 26, 1920.

*Pleading and practice.    Voluntary and involuntary nonsuit.    At what point in*
*proceedings may plaintiff become voluntary nonsuit.    Rule as to nonsuit ·*
*after verdict.    Rule where verdict has been set aside as to party*
*becoming nonsuit.    General rule permitting plaintiff to*
*invoke new remedy or action where first action was a*
*mistaken form or inefficient to enforce liability.*

Action brought under the provisions of the so-called Carmack amendment to the
Hepburn Act.

*Held:*

1.   When exceptions are sustained in jury cases, as well as in those tried before
a single Justice without the aid of a jury, a trial de novo follows, unless it is
otherwise decided and stated in the rescript.

2.   The rules governing right of plaintiff to an entry of nonsuit, as given in
*Washburn* v. *Allen,* 77 Maine, 344, are affirmed, but the rule, "after verdict
there can be no nonsuit," refers to a subsisting verdict.

3.   A verdict which has been set aside by sustaining exceptions is not a subsisting
verdict, and since the case, after such sustained exceptions, comes up for trial as
if no trial had ever been held, *Derrick* v. *Taylor,* 171 Mass., 444, the plaintiff is
entitled to voluntary nonsuit, as of right, in accordance with *Washburn* v.
*Allen,* supra.

4.   The mistaken selection of a remedy that never existed and its fruitless prose-
cution until it is adjudged inapplicable, does not prevent the exercise of another,
if appropriate, even if inconsistent with that first adopted.

5.   The requested instruction in this case which would take the decision of a
question of fact from the jury was properly refused.

Action to recover damages for alleged injuries to horses shipped by
plaintiff to Kentucky, the defendant company being the initial
carrier.    Defendant filed plea of general issue; also brief statement.
Verdict for plaintiff in the sum of $850.    Defendant filed motion for
new trial; also exceptions to certain rulings of presiding Justice.
Judgment in accordance with opinion.

Case stated in opinion.

*McGillicuddy & Morey,* for plaintiff.

*White, Carter & Skelton,* for defendant.

SITTING:   CORNISH, C. J., PHILBROOK, DUNN, MORRILL, DEASY, JJ.

PHILBROOK, J.   The record in this case discloses that the plaintiff was the owner of three horses which he shipped from Lewiston, Maine, to Lexington, Kentucky, on February 13, 1917.   He delivered the animals to the defendant for transportation over its road, and connecting roads, to their destination.   Upon their arrival, which the plaintiff alleges was unduly delayed, they manifested such lack of food and water during their journey that the owner claimed them to be nearly worthless.   On August 15, 1917, he brought an action against this defendant at common law, sounding in tort, and claiming damages for the negligent manner in which the defendant performed its duties as a common carrier.   That action, which we shall refer to as the first case, was entered and tried in 1917, at the September term of the Supreme Court held in Androscoggin County.   Verdict was rendered in behalf of the plaintiff and defendant took that case to the Law Court on motion and exceptions.   In a per curiam decision, 117 Maine, 560, this court said, "The action was at common law to enforce a common law liability.   The theory of the plaintiff throughout the case, and not abandoned in argument, was that the negligence alleged was in fact the negligence of the defendant, and not that of a connecting carrier, and that the delay causing the damage was on the defendant's railroad in the State of Maine.   The defendant asked for a directed verdict and was refused.   The refusal was the subject of the third exception.   It was incumbent on the plaintiff to prove liability on the part of the Maine Central Railroad. The plaintiff's evidence, taken as a whole, failed to prove that fact, and therefore the motion of the defendant to direct a verdict in its favor should have been granted.   The conclusion here reached necessarily disposes of the motion.   Exceptions sustained."   Thus it will be seen that only one out of three exceptions was passed upon by the court in the finding upon the first case.   This finding was certified to the court below and on June 22, 1918, the clerk of that court entered on his docket "certificate of opinion received from the law court, to wit, exceptions sustained."   On the fifth day of the September term, 1918, in the court below the entry was made "Plaintiff nonsuit," and on a later date the further entry was made "Judgment for defendant, Oct. 4, 1918, costs $82.95; execution issued April 8, 1919."   The clerk testified that the entry of "judgment for defend-

ant" was made by rubber stamp and was a judgment for costs only.

On February 4, 1919, the suit at bar, which we shall refer to as the second case, was brought under the provisions of the so-called Carmack amendment to the Hepburn Act, waiving the tort and sounding in contract. This second case was tried at the April term 1919, when again the plaintiff recovered a verdict. In its brief statement of special matter of defense in the second case, the defendant set forth the fact of the institution and trial of the first case and declared "that by this election by the plaintiff, by his said writ dated August 15, 1917, of the form of action he would pursue, and by his trial before the Supreme Judicial Court at nisi prius and before the Law Court, the plaintiff made an election of which form of action he would pursue in this cause, and having elected and proceeded upon the form of action sounding in tort, he is forever barred from bringing a new action against the same parties for the same cause of action, setting up a declaration sounding in contract, as in the suit now pending; and that the subject matter of the pending suit is res judicata, said plaintiff having had full trial of said cause of action— the suit of *Frank R. Hayden* v. *Maine Central Railroad Comapny*, the date of the writ being August 15, 1917, trial being had in said suit at the September 1917 term of the Supreme Judicial Court in and for the County of Androscoggin."

Before going to trial on this second case the defendant also presented a motion asking that either the docket entry, "Plaintiff nonsuit" in the case of *Frank R. Hayden* v. *Maine Central Railroad Company*, in which the writ was dated August 15, 1917, be considered and read as "Plaintiff nonsuit; no further action," or that this entry of "Plaintiff nonsuit" be striken from the docket and judgment entered for the defendant, which appears as No. 799 on the docket of the Androscoggin County Supreme Judicial Court, September term, 1918. This motion was denied and exceptions by defendant allowed.

The defendant then objected to the admission of any evidence under the new declaration in the writ in the second case on the ground that the plaintiff had elected to bring this action on the tort in the first suit, and by this election and by the very bringing of the action he was forever barred from waiving the tort and proceeding under the contract. The presiding Justice overruled these objections, and

exceptions were allowed. The case then proceeded to trial and at the close of the evidence the defendant offered a motion that a verdict be directed for the defendant on two grounds:

First; that the entry of nonsuit in the case of *Frank R. Hayden* v. *Maine Central Railroad Company*, as it appears upon the docket, September term, 1918, Androscoggin County, Supreme Judicial Court, is in fact a final entry, and gives judgment to the defendant; and, therefore, the defendant in this present suit, having pleaded the subject matter of the present suit, was res adjudicata; that the court find that the subject matter of the present suit is res adjudicata, and direct a verdict upon this ground.

Second; that the declaration in the writ in the suit of *Frank R. Hayden* v. *Maine Central Railroad Company*, which writ was dated August 17th 1917, was a declaration at common law which sounded in tort, and by this declaration which sounded in tort the plaintiff elected the form of action which he would pursue, and is forever barred from now bringing a writ similar to the pending suit, whose declaration sounds in contract, the election having been specially pleaded by the defendant in the present suit.

The motion was denied and exceptions were allowed.

At the close of the charge to the jury defendant's counsel requested the presiding Justice to instruct the jury that the evidence shows that the three horses shipped by the plaintiff "were not ordinary livestock within the meaning of the United States statute, commonly known as the Carmack amendment. Therefore the limitation of liability to the sum of one hundred and fifty dollars for each horse or mare shipped is in full force, and the plaintiff is limited and bound by said limitation if he is entitled to receive anything." This request was declined and exceptions allowed. The cause is therefore before us upon these several exceptions and will be discussed in the order following:

*Nonsuit.* The mandate in the first case, according to the time-honored practice in this jurisdiction remands that case to the court below for new trial unless it is otherwise expressly decided and stated in the rescript. In *Merrill* v. *Merrill*, 65 Maine, 79, a case in which there were exceptions to the rulings of a single Justice trying a cause without the aid of a jury, the court said, "When exceptions to his rulings are sustained, then his findings of fact, like a verdict, is set aside, and a trial de novo follows, unless it is otherwise expressly

decided and stated in the rescript." This court has never declared the same rule, in terms, where a verdict has been rendered by a jury, but the principle is the same, like procedure has long been followed with unvarying regularity when a jury verdict has been rendered, and it must now be regarded as the settled rule and practice in our courts that when exceptions are sustained in jury cases, as well as in those tried before a single Justice without the aid of a jury, a trial de novo follows, unless it is otherwise decided and stated in the rescript. In harmony with this expression of the rule is the case of *Mosher* v. *Jewett*, 63 Maine, 84, a case heard by a Justice of the Superior Court without the intervention of a jury, where the court said, "When exceptions in matters of law are sustained in such cases, the effect is to give a new trial both as to the facts and the law, the same as if the facts had been submitted to and found by a jury." In *Robinson* v. *Trofitter*, 106 Mass., 51, we find a case heard by a single Justice without the intervention of a jury and exceptions taken. The Law Court sustained the exceptions, the case went to trial a second time, and for a second time was before the Law Court. The rescript in the former mandate was "Exceptions sustained." At the second hearing before the Law Court the effect of the rescript "Exceptions sustained" was discussed and the court held that it had the same effect as it would have had upon a verdict, "that, as the finding stands in place of a verdict, the sustaining of exceptions generally is to have the same effect upon it as it would have upon a verdict, and that it is set aside as a verdict would be." The opinion also states that when the cause came up again for trial it stood as if no trial had ever been had.

Thus it follows, after the mandate of the Law Court in the first case had been received in the court below, that the first case was in order for trial "as if no trial had ever been had," to quote the words of Chief Justice Chapman in *Robinson* v. *Trofitter*, supra. But the plaintiff asked for, and obtained, an entry of nonsuit. His counsel claimed in open court, according to the record of the second case now before us, that such entry was with the full knowledge and consent of counsel for defendant, which the latter denies. Defendant's counsel further claims that the time in which such an entry could properly have been made had expired, and that any seeming acquiescence to such entry, so far as he did acquiesce, was with an understanding that the entry should carry with it a provision that the entry closed the

case and closed further litigation of that cause of action. Evidently counsel do not now agree as to the form or purport of the entry, and there is nothing of record to determine their misunderstanding. We must therefore take the entry as it appears, with such legal consequences as arise whether in favor of plaintiff or of defendant.

It may be well to observe that we are not now discussing retraxit, which at common law was an open, voluntary renunciation of a claim in court, and by which the plaintiff forever loses his action, 3 Blackstone Com., 296, but nonsuit, when, by the same authority, he may begin his suit again. "The only consequence of a nonsuit, in the general, is to subject the plaintiff to the payment of costs," *Dana* v. *Gill,* 20 Am. Dec., 255; and as to payment of such costs before bringing second suit see R. S., Chap. 87, Sec. 146. Here also we should observe that we are discussing voluntary nonsuit, with rules of law applicable thereto, and not involuntary nonsuit. Hence it is that the defendant strenuously urges that a case may reach a stage when all right to voluntary nonsuit ceases, either because of some rights which have accrued to the defendant, by virtue of the progress of the case, or for some other legal reason. And the defendant says that such conditions obtain in the first case, so that in any event the plaintiff was not entitled to voluntary nonsuit, the defendant ever denying consent to nonsuit except as before explained.

In *Washburn* v. *Allen,* 77 Maine, 344, decided in 1885, may be found such an exhaustive and learned discussion of the subject of nonsuit that it only becomes necessary to refer to that case in order to ascertain the common law of early days, the effect of the statute, 2 Henry *IV,* Chapter 7, (A. D. 1400) and the growth of modern practice in common law states. From that case we quote the rule "That the plaintiff, before opening his case to jury, or to the court, when tried before the court without the intervention of a jury, may become nonsuit as a matter of right; after the case is opened, and before verdict, leave to become nonsuit is within the discretion of the court; after verdict there can be no nonsuit." In 9 Ruling Case Law, 194, after discussing various authorities, the writer says that it is now generally held that a plaintiff has no right to take a voluntary nonsuit after a verdict has been rendered. The defendant confidently relies upon this rule and his reliance might be safe and secure had he not by his own act destroyed it, because the rule contemplates a subsisting verdict, as we shall see, and the very thing on which he depends

as marking the limit of the plaintiff's right to voluntary nonsuit, namely the verdict, is blotted out of existence by the defendant's success in the Law Court when he obtained a mandate sustaining his exceptions. For we have already noted in *Robinson* v. *Trofitter*, supra, that when exceptions were sustained, that it set aside the verdict and "when the cause came up again for trial it stood as if no trial ever had been had." In *Derrick* v. *Taylor*, 171 Mass., 444, we have a case brought in a Municipal Court where judgment was rendered for defendant and the plaintiff appealed to the Superior Court. In the Appellate Court the plaintiff discontinued the action upon his own motion. The case holds that the appeal vacated the judgment and opened the whole case to be dealt with in the Appellate Court as if it had been originally brought there, and the plaintiff could try it or discontinue it as he saw fit. In this latter case, by appeal, the plaintiff vacated the verdict won by the defendant; in *Robinson* v. *Trofitter*, supra, the defendant, on exceptions, vacated a verdict won by the plaintiff. In both cases it was held that the case, after verdict vacated, must proceed as if no trial had been had or verdict rendered. Applying these rules to the case at bar it seems plain that in the first case, when the defendant prevailed in his bill of exceptions, the verdict was set aside and the "after verdict no nonsuit" rule ceased to be operative. We must hold that in the first case the plaintiff was entitled to voluntary nonsuit and in the second case the defendant's exceptions upon this branch of the case must be overruled.

*Election of Remedy*: The exceptions taken upon this branch do not, in our opinion, require extended discussion. In a very recent case, *Marsh Bros. & Co.* v. *Bellefleur*, 108 Maine, 354, our court said, "The mistaken selection of a remedy that never existed and its fruitless prosecution until it is adjudged inapplicable, does not prevent the exercise of another, if appropriate, even if inconsistent with that first adopted." Again, in *Barnsdall* v. *Waltemeyer*, 142 Fed. Rep., 415, decided in the Circuit Court of Appeals for the Eighth Circuit, the court said, "the fatuous choice of a fancied remedy that never existed, and its futile pursuit until the court adjudges that it never had existence is no defense to an action to enforce an actual remedy inconsistent with that first invoked through mistake." In the case at bar the plaintiff first invoked an action which, as the facts proved, was inefficient to enforce liability on connecting railways, and

hence was a mistaken selection of action; and he was not, by this selection, prevented from invoking the second and appropriate action. Upon this branch of the case the exceptions must also be overruled.

*Ordinary Live-Stock*: The charge of the presiding Justice was full and comprehensive as to the law upon this subject and left the questions of fact to the jury. The requested instruction would take the decision of a question of fact from the jury and was properly refused.

*Exceptions overruled.*